SEND

ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE F. MOORE,               )<br>                              )<br>        Plaintiff,            )<br>                              )<br>     v.                       )<br>                              )<br> MICHAEL J. ASTRUE,[1]          )<br> Commissioner of Social Security, )<br>                              )<br>        Defendant.            )<br> _____) | No. CV 05-8696-RC<br><br>OPINION AND ORDER |

Plaintiff Bruce F. Moore filed a complaint on December 13, 2005, seeking review of the Commissioner's decision denying his application for disability benefits.  The Commissioner answered the complaint on May 24, 2006, and the parties filed a joint stipulation on July 13, 2006.

**BACKGROUND**

**I**

On May 21, 2002 (protective filing date), plaintiff applied for

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

1 disability benefits under Title II of the Social Security Act ("the
2 Act"), 42 U.S.C. § 423, claiming an inability to work since
3 September 29, 1999, due to obesity, high blood pressure, depression,
4 uncontrollable bodily functions, and left knee problems. Certified
5 Administrative Record ("A.R.") 54-57, 102. The plaintiff's
6 application was denied on September 16, 2002. A.R. 30-33. For
7 reasons unclear from the record, plaintiff's Title II application was
8 apparently reconstructed effective April 1, 2003, with his onset date
9 modified to March 7, 2000, A.R. 17, 61-63, and an administrative
10 hearing was held before Administrative Law Judge Peter J. Valentino
11 ("the ALJ") on January 13, 2005. A.R. 34-35, 311-45. On February 17,
12 2005, the ALJ issued a decision finding plaintiff is not disabled.
13 A.R. 14-27. The plaintiff appealed this decision to the Appeals
14 Council, which denied review on October 19, 2005. A.R. 4-13.

**II**

The plaintiff, who was born on February 4, 1956, is currently 51 years old. A.R. 54, 61. He has a high school education, attended two years of college, and has previously worked as an electronics technician. A.R. 76-83, 104, 109, 316-20, 331.

On March 7, 2000, Timothy C. Reynolds, M.D., an internist, examined plaintiff and diagnosed him with obesity, hyperlipidemia[2] and hypertension, among other conditions, and found plaintiff was

//

---

[2] Hyperlipidemia is "a general term for elevated concentration of any or all of the lipids in the plasma." Dorland's Illustrated Medical Dictionary, 852 (29th ed. 2000).

permanent and stationary[3] and should be precluded from very heavy lifting.[4]  A.R. 134-56.

On June 15-16, 2000, plaintiff was hospitalized at Los Angeles County-USC Medical Center after stating he was going to put a gun to his head and pull the trigger when he was refused admission into a weight loss program.  A.R. 157-82.  Plaintiff was initially diagnosed with depression secondary to general medical condition and his Global Assessment of Functioning ("GAF") was determined to be 20;[5] however, plaintiff denied being suicidal.  A.R. 165, 167-68, 174.  An electrocardiogram ("ECG") showed sinus tachycardia,[6] but was otherwise

---

[3] Dr. Reynolds evaluated plaintiff for California workers' compensation purposes.  For those purposes, "[a] disability is considered 'permanent and stationary' . . . 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'"  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103-04 n.3 (C.D. Cal. 2002) (citations omitted); Robertson v. Workers' Comp. Appeals Bd., 112 Cal. App. 4th 893, 897, 5 Cal. Rptr. 3d 485 (2003).

[4] Under the version of California's workers' compensation guidelines then in effect, a restriction from very heavy lifting means the individual "has lost approximately 25% of pre-injury capacity for lifting."  Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-14 (Labor Code of California, April 1997).  The Schedule for Rating Permanent Disabilities has been revised, effective January 2005.

[5] A GAF of 20 means "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e.g., largely incoherent or mute)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[6] Sinus tachycardia is an excessively rapid heartbeat "originating in the sinus node; it is normal during exercise or

3

1  normal.  A.R. 163.

3      On August 19, 2002, Aziz Karamlou, M.D., examined plaintiff and
4  diagnosed him with a history of hypertension and hypertensive
5  cardiovascular disease, dilated cardiomyopathy[7] with impending
6  congestive heart failure,[8] anxiety and depression, a weight-bearing
7  disorder of the lumbar spine, bronchial asthma with infrequent
8  asthmatic attacks, and morbid obesity with weight greater than 350
9  pounds.  A.R. 184-88.  Dr. Karamlou found plaintiff had dyspnea[9] on
10 exertion, easy fatigability, and orthopnea,[10] and opined plaintiff has
11 an unspecified bending limitation and he should be limited to lifting
12 and carrying 10 pounds and standing and walking four hours out of an
13 8-hour day.  A.R. 187-88.  Chest x-rays were consistent with mild

---

anxiety but is also associated with shock, hypotension, hypoxia, congestive heart failure, fever, and various high output states." Dorland's Illustrated Medical Dictionary at 1784.

[7] Dilated cardiomyopathy is "a syndrome of ventricular dilation, systolic contractile dysfunction, and often congestive heart failure; the course is usually progressive with a poor prognosis." Dorland's Illustrated Medical Dictionary at 287.

[8] Congestive heart failure is "a clinical syndrome due to heart disease, characterized by breathlessness and abnormal sodium and water retention, often resulting in edema [the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body].  The congestion may occur in the lungs or peripheral circulation or both, depending on whether the heart failure is right-sided or general." Id. at 567, 650.

[9] Dyspnea is "breathlessness or shortness of breath; difficult or labored breathing." Dorland's Illustrated Medical Dictionary at 558.

[10] Orthopnea is "dyspnea that is relieved by assuming an upright position." Id. at 1280.

4

1  chronic obstructive pulmonary disease and an ECG was normal.  A.R.
2  189-90.
3
4      On August 26, 2002, Barry Edelman, M.D., a psychiatrist, examined
5  plaintiff and diagnosed him with an unspecified depressive disorder
6  and determined his GAF to be 60.[11]  A.R. 192-96.  Dr. Edelman opined:
7
8      [plaintiff] would be able to understand, remember, and
9      follow simple instructions.  [He] would have difficulty
10     understanding, remembering, and following complex
11     instructions. . . .  The [plaintiff] would be able to
12     maintain concentration on simple work.  The [plaintiff]
13     would be able to maintain adequate pace doing simple work.
14     . . .  The [plaintiff] would have moderate difficulty
15     interacting with peers and supervisors . . . [and] marked
16     difficulty interacting with the public.
17
18 A.R. 196.
19
20     On August 27, 2003, plaintiff was examined in the emergency room
21 at Methodist Hospital, where he was diagnosed with chronic stasis
22 edema and a history of hypertension.  A.R. 227-37.  A chest x-ray
23
---
[11] A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

1 revealed increased density at the left base, which could be caused by
2 either post-inflammatory change or a small area of pneumonia.  A.R.
3 235.

   On September 26, 2003, Stephen J. Soldo, M.D., a cardiologist,
examined plaintiff and diagnosed him with probable hypertensive heart
disease, recent diagnosis of "heart failure" probably on the basis of
diastolic function, suboptimal control of hypertension, osteoarthritis
of the knees and as significantly overweight.  A.R. 250-51.  An ECG
was normal; however, an echocardiogram showed left atrial enlargement,
concentric left ventricular hypertrophy,[12] normal left ventricular
wall motion, and no significant valvular stenosis or regurgitation.
A.R. 252-53.  On October 20, 2003, Dr. Soldo opined plaintiff has
hypertensive disease with associated congestive heart failure, anxiety
and depression, and a component of plaintiff's hypertension is that
plaintiff is significantly overweight.  A.R. 248.  However, Dr. Soldo
found plaintiff's blood pressure responded to treatment.  Id.  On
November 1, 2004, Dr. Soldo again diagnosed plaintiff with
hypertensive heart disease and associated heart failure and also
diagnosed plaintiff with dyslipidemia[13] and diabetes.  A.R. 258.  Dr.
Soldo further stated plaintiff has a New York Heart Association class
//
//

---

[12]  Hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells."  Dorland's Illustrated Medical Dictionary at 859.

[13]  Dyslipidemia is an "abnormality in, or abnormal amounts of, lipids and lipoproteins in the blood[.]"  Dorland's Illustrated Medical Dictionary at 555.

6

III functional status,[14] becoming short of breath with less than 3 blocks' exertion. Id. Additionally, Dr. Soldo reported plaintiff's blood pressure has been well controlled for several months and his peripheral edema is controlled with diuretic therapy; however, plaintiff has substantial limitations due to osteoarthritis and has to walk with a cane. Id.

On February 26, 2004, Stanley J. Majcher, M.D., an internist, conducted an agreed medical examination of plaintiff,[15] and found plaintiff was permanent and stationary and should be limited to light work with no exposure to undue emotional stress.[16]  A.R. 259-304.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability

---

[14] Under the New York Heart Association's classification system, class III functional status indicates "[p]atients with cardiac disease resulting in marked limitation of physical activity.  They are comfortable at rest.  Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain." (http://www.americanheart.org/presenter.jhtml?identifier=4569) (last visited May 25, 2007).

[15] Under California worker's compensation law, an "agreed medical examiner [is] chosen by the parties because of his expertise and neutrality." Power v. Workers' Comp. Appeals Bd., 179 Cal. App. 3d 775, 782, 224 Cal. Rptr. 758 (1986).

[16] Under the version of California's workers' compensation guidelines then in effect, light work means the individual "can do work in a standing or walking position, with a minimum of demands for physical effort."  Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-15 (Labor Code of California, April 1997).

7

benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. § 404.1520(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has

1  sufficient residual functional capacity despite the impairment or
2  various limitations to perform his past work.  20 C.F.R. §
3  404.1520(f).  If not, in **Step Five**, the burden shifts to the
4  Commissioner to show the claimant can perform other work that exists
5  in significant numbers in the national economy.  20 C.F.R. §
6  404.1520(g).

   Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
March 7, 2000.  (Step One).  The ALJ then found plaintiff "has the
following medically determinable impairments that in combination are
considered 'severe' under the Social Security Act and regulations:
obesity, depression, hypertension and chronic stasis edema" (Step
Two); however, he does not have an impairment or combination of
impairments that meets or equals a Listing.  (Step Three).  The ALJ
next determined plaintiff cannot perform his past relevant work.
(Step Four).  Finally, the ALJ found plaintiff has the residual
functional capacity ("RFC") to perform a significant number of jobs in
the national economy; therefore, he is not disabled.  (Step Five).

**IV**

A claimant's RFC is what he can still do despite his physical,
mental, nonexertional, and other limitations.  <u>Mayes v. Massanari</u>, 276
F.3d 453, 460 (9th Cir. 2001); <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155
n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC "to
perform work activity at the sedentary exertional level[,]"[17] as

---

[17] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like

9

follows:

> The [plaintiff] can push, pull, lift and carry ten pounds occasionally and ten pounds frequently. The [plaintiff] can stand and walk two hours of an eight-hour workday and sit six hours of an eight-hour workday. The [plaintiff] can occasionally climb ramp[s] and stairs but never ladders, ropes, or scaffolds. The [plaintiff] can occasionally stoop, kneel, and crouch. The [plaintiff] must avoid fumes, odors, dusts, gases, and poor ventilation. In addition, from a mental standpoint, the [plaintiff] would be able to understand, remember, and follow simple instructions. The [plaintiff] would have difficulty understanding, remembering, and following complex instructions. The [plaintiff] would be able to maintain concentration on simple work. The [plaintiff] would be able to maintain adequate pace doing simple work from a psychiatric perspective. The [plaintiff] would have moderate difficulty interacting with peers and supervisors based on the [plaintiff's] relatedness. The [plaintiff] would have marked difficulty interacting with the public.

A.R. 26. However, plaintiff contends the ALJ's RFC determination is

---

docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

not supported by substantial evidence because the ALJ failed to properly consider the opinions of plaintiff's treating physicians, improperly found plaintiff was not a credible witness, did not properly assess plaintiff's obesity, and improperly accorded controlling weight to the opinions of nontreating physicians.

**A.   Dr. Soldo's Opinions**:

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. § 404.1527(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s). . . ."). Therefore, the Commissioner must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Bayliss, 427 F.3d at 1216. Additionally, "the opinions of a specialist about medical issues related to his or her area of specialization are given more weight that the opinions of a nonspecialist." Smolen, 80 F.3d at 1285; Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

1    Here, Dr. Soldo, who is plaintiff's treating cardiologist, opined
2 plaintiff has a New York Cardiac Association class III functional
3 status, becomes short of breath with less than 3 blocks' exertion, and
4 must walk with a cane.  As set forth above, class III functional
5 status means plaintiff has a "marked limitation of physical
6 activity[,]" is only "comfortable at rest" and "[l]ess than ordinary
7 activity causes [plaintiff] fatigue, palpitation, dyspnea or anginal
8 pain."  The ALJ, however, failed to properly assess Dr. Soldo's
9 opinion about the physical limitations caused by plaintiff's heart
10 problems, and in this regard, the ALJ committed legal error.  Smolen,
11 80 F.3d at 1286; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.
12 1991).

**B.   Credibility:**

The plaintiff testified he has congestive heart failure that
makes him weak, he does not have proper circulation in his legs, he
has diabetes mellitus, which causes him occasional memory and
concentration problems and lightheadedness if his blood sugar "goes
out of whack[,]" he has irritable bowel syndrome with diarrhea, he
gets asthma when he overexerts himself or becomes upset, and he
experiences left knee pain when walking.  A.R. 331-33, 335-38.  The
plaintiff stated he tries to stay off his legs and walk as little as
possible because they swell up during the day and his physicians have
advised him to elevate his legs as often as possible to keep the
swelling down.  A.R. 331-33.  The plaintiff also stated he has
difficulty sitting because his legs go numb and if he does not keep
his legs elevated, they swell, and if he tries to bend over, he feels
as though he will fall.  A.R. 333-34.  The plaintiff testified he can

exert himself for between 10 and 30 minutes before he has to sit or lie down with his legs elevated for between 30 minutes and an hour. A.R. 337-38.

Once a claimant has presented objective evidence that he suffers from an impairment that could cause pain or other nonexertional limitations,[18] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Moisa, 367 F.3d at 885. Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Parra, 481 F.3d at 750 (9th Cir. 2007).

The ALJ found plaintiff's "allegations of debilitating pain and disabling functional limitations . . . not fully credible" because plaintiff "is able to take care of his personal needs[,] . . . do

---

[18] "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

13

1  light cooking, light shopping[,] [he] plays with cats during the day.
2  . . . , socializes with close friends and he drives a car." A.R. 22.
3  Because "many home activities are not easily transferable to what may
4  be the more grueling environment of the workplace, where it might be
5  impossible to periodically rest or take medication[,]" <u>Fair v. Bowen</u>,
6  885 F.2d 597, 603 (9th Cir. 1989), to base a negative credibility
7  determination on a claimant's daily activities, the ALJ must make a
8  finding that the claimant "'is able to spend a *substantial part* of
9  [his] day engaged in pursuits involving the performance of physical
10 functions that are transferable to a work setting. . . .'" <u>Vertigan</u>
11 <u>v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting <u>Morgan</u>, 169
12 F.3d at 600; emphasis in original); <u>see also</u> <u>Gonzalez v. Sullivan</u>, 914
13 F.2d 1197, 1201 (9th Cir. 1990) (If daily activity evidence is used to
14 rebut claims of nonexertional limitations, the ALJ must find "the
15 ability to perform those daily activities translate[s] into the
16 ability to perform appropriate work.").

18    Here, plaintiff testified he lives with his mother, either he or
19 his mother cook, he does some shopping at least once a week and some
20 light cleaning, and he helps care for several cats; however, he has to
21 stop and rest for 30 minutes to an hour after 15-30 minutes of
22 activity, and it takes him up to 4 hours to do what another person
23 could do in an hour. A.R. 87, 89, 326-27, 337-38. Plaintiff also
24 stated he occasionally drives to medical appointments, the store, and
25 the post office, and he sometimes walks around the block. A.R. 88,
26 326. Finally, plaintiff stated he occasionally sees his uncle, a
27 workers' compensation attorney, and he has a friend who visits him
28 maybe once a month. A.R. 339. However, "the mere fact that a

[claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan, 260 F.3d at 1050 (quoting Fair, 885 F.2d at 603); Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005). Therefore, plaintiff's limited daily activities do not support the ALJ's negative credibility determination. See Vertigan, 260 F.3d at 1049-50 (claimant's ability to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, read, take physical therapy, and exercise at home did not constitute a clear and convincing reason for rejecting her pain testimony); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("[E]vidence that [claimant] could assist with some household chores was not determinative of disability. 'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" (citation omitted)).

The ALJ's other reason for rejecting plaintiff's testimony is that it was contradicted by the medical evidence. A.R. 22-24. However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." Vertigan, 260 F.3d at 1049; see also Robbins, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("It is improper as a matter of law to discredit

15

excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").

Thus, "the ALJ provided unsatisfactory reasons for discounting [plaintiff's] credibility, and . . . his findings were unsupported by substantial evidence based on the record as a whole." Reddick, 157 F.3d at 724.[19]  For the reasons cited herein, the ALJ's assessment of plaintiff's RFC, and his subsequent conclusion that plaintiff retains the RFC to perform a significant number of jobs in the national economy, are not supported by substantial evidence.

## V

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  "Remand for further administrative proceedings

---

[19] Similarly, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Parra, 481 F.3d at 750; see also Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings.").  Here, plaintiff's mother, Erline J. Moore, completed a third-party questionnaire discussing plaintiff's daily activities and limitations. A.R. 92-97.  Third party daily activity questionnaires are competent evidence, and "an important source of information about a claimant's impairments," Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999), and the ALJ erred in failing to properly consider plaintiff's mother's statements. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

is appropriate if enhancement of the record would be useful." <u>Benecke</u>, 379 F.3d at 593.  Here, since the ALJ failed to properly consider the opinions of plaintiff's treating cardiologist, and because there are "insufficient findings as to whether [plaintiff's] testimony should be credited as true," remand is the appropriate remedy.  <u>Connett</u>, 340 F.3d at 876; <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003).[20]

**ORDER**

    IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:   May 29, 2007              /s/ Rosalyn M. Chapman
                                                 ROSALYN M. CHAPMAN
                                     UNITED STATES MAGISTRATE JUDGE

---

[20] Having reached this conclusion, it is unnecessary to reach the other issues plaintiff raises, none of which warrant any further relief than granted.

R&R-MDO\05-8696.mdo
5/29/07

17